EXHIBIT A

1  | Benjamin Heikali, SBN 307466
2  | Joshua Nassir, SBN 318344
   | **FARUQI & FARUQI, LLP**
3  | 10866 Wilshire Boulevard, Suite 1470
   | Los Angeles, CA 90024
4  | Telephone: (424) 256-2884
   | Facsimile: (424) 256-2885
5  | Email: bheikali@faruqilaw.com
   |          jnassir@faruqilaw.com

6  | *Attorneys for Plaintiffs*

7  | [Additional Counsel on Signature Page]

8

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JAN 16 2018

Sherri R. Carter, executive officer/Clerk
By: _____, Deputy
Moses Soto

9

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF LOS ANGELES

| | |
|---|---|
| NIKITA SANTINO and AARON RABBANIAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE, INC.,<br><br>Defendant. | CASE NO. BC **BC 6 9 0 3 9 6**<br><br>**CLASS ACTION COMPLAINT**<br><br>(1) **Violation of California Civil Code § 1770,** *et seq.*<br>(2) **Violation of California Business and Professions Code § 17200,** *et seq.*<br>(3) **Violation of California Business and Professions Code § 17500,** *et seq.*<br>(4) **Breach of Express Warranty**<br>(5) **Breach of Implied Warranty**<br>(6) **Breach of Implied Contract**<br>(7) **Common Law Fraud**<br>(8) **Intentional Misrepresentation**<br>(9) **Negligent Misrepresentation**<br>(10) **Trespass to Chattel**<br>(11) **Unjust Enrichment**<br><br>**DEMAND FOR JURY TRIAL** |

- 1 -
CLASS ACTION COMPLAINT

1       Plaintiff Nikita Santino ("Plaintiff Santino") and Plaintiff Aaron Rabbanian ("Plaintiff

2  Rabbanian") (collectively, the "Plaintiffs") on behalf of themselves and all other similarly

3  situated persons in California, bring this action against Defendant Apple, Inc. ("Apple" or

4  "Defendant"), and allege, upon personal knowledge as to their own conduct, and upon

5  information and belief as to the conduct of others, as follows:

6  **I.  NATURE OF THE ACTION**

7       1.  Plaintiffs bring this class action case against Apple for its intentional and

8  purposeful degradation of speed of Apple's iPhone 6s and iPhone 6s Plus models (the

9  "Products") through software updates iOS 10.2.1 and above. Plaintiff Santino seeks to represent

10  all California consumers who purchased any of the Products that had iOS 10.2 or a previous iOS

11  installed at the time of purchase, and subsequently updated their Products to iOS 10.2.1 or newer

12  (the "Update Class"). Plaintiff Rabbanian also seeks to represent all California consumers who

13  purchased any of the Products with iOS 10.2.1 or higher pre-installed or installed upon activation

14  (the "Purchase Class") (collectively, the "Classes").

15       2.  On or around January 23, 2017, Apple released iOS 10.2.1, an operating system

16  update in which Defendant introduced a limit to the Products' processing speed. This speed

17  reduction resulted in multiple performance issues with the Products, such as longer launch times

18  for applications and a reduction of frame-rate in some applications. Once Plaintiff Santino and

19  members of the Update Class updated their phones to iOS 10.2.1 or higher, their phones were

20  slowed down. Plaintiff Rabbanian and members of the Purchase Class purchased their iPhones

21  with iOS 10.2.1 or higher pre-installed and therefore received iPhones with limited processor.

22       3.  On or around December 2, 2017, Apple released iOS 11.2 update, an operating

23  system update which also resulted in slowing and stalling the Products' processer. Members of

24  the Update Class that updated to iOS 11.2 from a non-defective software update therefore had

25  their phones throttled. Members of the Update Class that updated to iOS 11.2 from iOS 10.2.1 or

26  higher not only continued to carry Apple's throttled software update on their Product, but the

27

28

1 negative effects of the throttling are "even more pronounced" after the iOS 11.2 update.[1]
2 Members of the Purchase Class purchased their iPhones with iOS 11.2 or higher pre-installed
3 and therefore received iPhones with stalled CPUs as well.

4     4.     On December 20, 2017, Apple admitted in an email to *TechCrunch* that it
5 purposefully throttles the Products' performance.[2]

6     5.     On December 28, 2017, Apple published a message to consumers, admitting that
7 as a result of the iOS 10.2.1 update, "users may experience longer launch times for apps and
8 other reductions in performance."[3] Apple also admitted that the same throttling of processing
9 power was extended to iOS 11.2.[4]

10     6.     However, Plaintiffs and members of the Classes did not know or expect that the
11 Products would be slowed down, regardless of whether their batteries were experiencing
12 ordinary and commonplace aging, charge levels, or weather conditions. Further, Plaintiffs and
13 members of the Classes did not consent to Apple slowing down their Products. While users may
14 expect software updates to add features, security patches and/or remedy bugs in their Products, a
15 user does not reasonably expect that a product they purchased and own could be purposefully
16 and remotely degraded by the manufacturer. Further, due to security issues, refraining from
17 updating the Products is not a viable option.

18     7.     Despite this lack of expectation and consent, Apple intentionally throttled the
19 Products and failed to inform Plaintiff Santino and members of the Update Class at the time of
20 update that Apple was purposefully throttling the Products. Apple additionally failed to inform
21 Plaintiff Rabbanian and members of the Purchase Class at the time of purchase that the Products

22

---

23 [1] https://www.geekbench.com/blog/2017/12/iphone-performance-and-battery-age/ (last visited
24 January 15, 2018).

25 [2] https://techcrunch.com/2017/12/20/apple-addresses-why-people-are-saying-their-iphones-with-
older-batteries-are-running-slower/ (last visited on January 15, 2018)
26

27 [3] https://www.apple.com/iphone-battery-and-performance/ (last visited on January 15, 2018).

28 [4] *Id.*

1   supplied were not original versions of the iPhone 6s and iPhone 6s Plus, but degraded versions,

2   and that the Products did not conform to prior representations surrounding the Products'

3   processing speed.

4        8.    As a result of Defendant's intentional slowing down of the Products, Plaintiffs

5   and other members of the Classes were harmed. Had Plaintiffs and consumers known that the

6   operation of the Products would be slowed down by Apple, they would not have purchased the

7   Products or would have paid significantly less for them. Therefore, Plaintiffs and other

8   consumers have suffered injury in fact as a result of Defendant's unlawful practices.

9        9.    Plaintiffs, on behalf of themselves and the Classes, are seeking damages,

10  restitution, declaratory and injunctive relief, and all other remedies this Court deems appropriate.

11  **II.**    **JURISDICTION AND VENUE**

12       10.    This Court has original jurisdiction over this case pursuant to California

13  Constitution, Article VI § 10, because this case is a cause not given by statute to other trial

14  courts. Furthermore, this Court has jurisdiction over this matter because Defendant maintains its

15  headquarters in Cupertino, California and the wrongful acts and omissions alleged herein were

16  directed from Defendant's headquarters. Defendant currently does business in California and

17  maintains systematic and continuous contacts with California and California consumers.

18       11.    Further, Plaintiffs, members of the proposed Classes, and Defendant are all

19  citizens of California.

20       12.    Venue in this county is proper because a substantial part of the events giving rise

21  to one of Plaintiffs' and many class members' claims occurred in Los Angeles County.

22  **III.**    **PARTIES**

23       13.    Plaintiff Nikita Santino is, and at all times mentioned herein was, a resident of

24  Alturas, California, and a citizen of the State of California. On or around October 2015, Ms.

25  Santino purchased the iPhone 6s from a Verizon store in Redding, California. During the

26  relevant class period, Ms. Santino updated her phone's operating system to iOS 10.2.1 and then

27  iOS 11.2. After updating her phone to iOS 10.2.1, Ms. Santino noticed that her phone was

28  substantially slower.  When she performed the next update, an even more marked degradation of

1  performance was noted. In purchasing her iPhone 6s, Ms. Santino expected that her phone's
2  operating system would operate at the same speed throughout its lifespan and that the update to
3  iOS 10.2.1 would not slow down her iPhone. Ms. Santino did not expect or consent to Apple
4  throttling or slowing down her iPhone. Had Ms. Santino known that the operation of her iPhone
5  would be slowed down by Apple, she would not have purchased the iPhone or would have paid
6  significantly less for it. Likewise, if Ms. Santino knew that Apple's battery used in the Products
7  could not handle the normal day-to-day operation of the Products, she would not have purchased
8  the Product or would have paid significantly less for it. Therefore, Ms. Santino has been harmed
9  by Apple's unlawful conduct.

10       14.     Plaintiff Aaron Rabbanian is, and all times mentioned herein was, a resident of
11  Los Angeles, California, and a citizen of the State of California. On or around April 2017, Mr.
12  Rabbanian purchased the iPhone 6s from a T-Mobile store in Los Angeles, California. In
13  purchasing the Product, Mr. Rabbanian relied on Apple's advertising of the product, such as
14  online advertisements, to learn about the phone's specifications. Upon purchasing the Product,
15  the device carried one of the affected iOS updates and Mr. Rabbanian currently has iOS update
16  11.2.1 on his device. Mr. Rabbanian did not expect or consent to Apple throttling or slowing
17  down his iPhone. After approximately one month of use, Mr. Rabbanian noticed numerous
18  complications with the performance of the Product. For example, Mr. Rabbanian experienced his
19  device slow considerably when using various applications, he was required to restart his phone
20  multiple times due to application freezes, and due to these reductions in speed, could no longer
21  use the phone for many of its ordinary functions, such as multi-tasking with multiple
22  applications. If Mr. Rabbanian knew that Apple would have throttled the performance of his
23  device, he would not have purchase the iPhone or would have paid significantly less for it.
24  Therefore, Mr. Rabbanian has been harmed by Apple's unlawful conduct.

25       15.     Defendant Apple, Inc. is an entity formed under the laws of the State of California
26  with its principal place of business located at 1 Infinite Loop, Cupertino, California 95014. On
27  information and belief, Apple's acts, practices, and omissions related to this action, were directed
28  and emanated from its principal place of business in Cupertino, California.

## IV.    SUBSTANTIVE ALLEGATIONS

**Apple's Marketing and Advertising of the Products**

16.    During the relevant class period, Apple was and continues to be responsible for the design, development, manufacturing, marketing, labeling, packaging, advertising, distribution, and sale of the Products.

17.    During the relevant class period, Apple marketed and advertised the Products as being powered "by the custom-designed 64-bit A9 chip" which promised to deliver "up to 70 percent faster CPU performance, and up to 90 percent faster GPU performance for all your favorite graphics-intensive games and apps:"[5]

## Technology

# A9. The most advanced chip ever in a smartphone.

iPhone 6s is powered by the custom-designed 64-bit A9 chip. It delivers performance once found only in desktop computers. You'll experience up to 70 percent faster CPU performance, and up to 90 percent faster GPU performance for all your favorite graphics-intensive games and apps.

Learn more about iPhone 6s technology ›

| Desktop-class | Up to | Up to |
|---|---|---|
| **64**-bit | **70**% | **90**% |
| architecture | faster CPU | faster GPU |

---

[5] https://web.archive.org/web/20160824025053/http:/www.apple.com/iphone-6s/ (last visited on January 15, 2018).

CLASS ACTION COMPLAINT

1      18.    Apple advertised the A9 chip as the "cutting edge" of mobile chips and provided a

2   graph to consumers, verifying that the A9 chip in the Products is superior to its prior devices in

3   terms of speed:[6]





---

[6]  https://web.archive.org/web/20160825154553/http://www.apple.com:80/iphone-6s/technology
(last visited on January 15, 2018).

19.     During Apple's September 2015 Keynote on the iPhone 6s and iPhone 6s Plus, Apple also warranted the information in Paragraphs 17-18 in regard to this generation of iPhones.[7]

**Apple Intentionally Slows Down the Operating System of the Products**

20.     On or around January 23, 2017, Apple released iOS 10.2.1, an operating system update which Apple represented to consumers was for bug fixes and improvement of security for the iPhone. The iOS 10.2.1 software update prompt that consumers saw on their iPhones is depicted below. However, the software update prompt did not disclose that the update would slow down the operation of the iPhone once installed.[8]

iOS 10.2.1
Apple Inc.
72.2 MB

iOS 10.2.1 includes bug fixes and improves the security of your iPhone or iPad.

For information on the security content of Apple software updates, please visit this website: https://support.apple.com/HT201222

21.     The "support.apple.com" link featured on the software update prompt leads consumers to an Apple security page which lists all the recent iOS updates,[9] including a link to a

---

[7] https://www.youtube.com/watch?v=0qwALOOvUik (last visited on January 15, 2018) (relevant portions begin at 1:38:45).

[8]     https://www.forbes.com/sites/gordonkelly/2017/01/25/apple-ios-10-2-1-release-should-you-upgrade/#6f9486c05a3a (last visited January 15, 2018).

[9] https://support.apple.com/en-us/HT201222 (last visited on January 15, 2018).

1  page dedicated to iOS 10.2.1.[10] However, the page dedicated to iOS 10:2.1 only discusses

2  security issues and does not disclose that update would slow-down the operation of the iPhone

3  once installed.[11] Based on information and belief, the software update prompt for updates after

4  iOS 10.2.1 likewise did not disclose that the update would slow down the operation of the iPhone

5  once installed.

6        22.     Plaintiffs and other members of the Update Class were exposed and relied on the

7  foregoing software update prompt prior to updating their phones to iOS 10.2.1.

8        23.     Plaintiffs and members of the Update Class were given the option to install the

9  iOS 10.2.1 update or not. However, failing to do an update often leaves one vulnerable to

10  security patches and other fixes for the Products.  The purported voluntary nature of an update is

11  specious at best.

12        24.·    Unbeknownst to Plaintiffs and members of the Classes, the iOS 10.2.1 update

13  included a limitation, or throttling, of the Products' processing speed to keep the Products from

14  demanding too much from the Products' batteries, which are incapable of providing the power

15  needed for the device's normal use. Once Plaintiff Santino and members of the Update Class

16  updated their phones to iOS 10.2.1 or higher, their phones were slowed down. Plaintiff

17  Rabbanian and members of the Purchase Class purchased their iPhones with iOS 10.2.1 or higher

18  pre-installed and therefore received iPhones with stalled CPUs from the beginning of its use.

19

20

21

22

23

24

25

26

_____

27  [10] https://support.apple.com/en-us/HT207482 (last visited on January 15, 2018).

28  [11] *Id.*

25. On or around December 2, 2017, Apple released iOS 11.2, an operating system update which Apple represented to consumers was for "bug fixes and improvements." The update also "introduce[d] Apple Pay Cash to send, request, and receive money from friends and family with Apple Pay." The iOS 11.2 software update prompt that consumers saw on their iPhones is depicted below. However, the software update prompt did not disclose that the update would slow down the operation of the iPhone or affect power management once installed.[12]

 **iOS 11.2**
Apple Inc.
430.7 MB

iOS 11.2 introduces Apple Pay Cash to send, request, and receive money from friends and family with Apple Pay. This update also includes bug fixes and improvements.

For information on the security content of Apple software updates, please visit this website: https://support.apple.com/kb/HT201222

26. The "support.apple.com" link featured on the software update prompt leads consumers to an Apple security page which lists all the recent iOS updates,[13] including a link to a page dedicated to iOS 11.2.[14] However, the page dedicated to iOS 11.2 only discusses security

---

[12]   https://www.forbes.com/sites/amitchowdhry/2017/12/02/ios-11-2-features/#6a1e106249ae (last visited on January 15, 2018).

[13] https://support.apple.com/en-us/HT201222 (last visited on January 15, 2018).

[14] https://support.apple.com/en-us/HT208334 (last visited on January 15, 2018).

CLASS ACTION COMPLAINT

issues and does not disclose that the update would slow down the operation of the iPhone once installed.[15] Based on information and belief, the software update prompt for updates after iOS 11.2 likewise did not disclose that update would slow down the operation of the iPhone once installed.

27.     Plaintiffs and other members of the Update Class were exposed to and relied on the foregoing software update prompt prior to updating their phones to iOS 11.2.

28.     Members of the Update Class were given the option to install the iOS 10.2.1 or above update or not. Members of the Purchase Class were subject to iOS 10.2.1 or above upon first purchasing and using the Products.

29.     On December 18, 2017, John Poole, a developer for GeekBench, a program which provides reference points for computing power for mobile and non-mobile devices, provided a report which concluded that Apple's iOS 10.2.1 and 11.2.0 updates carried with them performance throttling for the Products (the "GeekBench Report").[16]

30.     The throttling of users' Products resulted in a multitude of performance issues. By Apple's own admission, these issues include: longer launch times for applications; lower frame rates while scrolling; backlight dimming; a reduction in speaker volume; a reduction in frame rates in applications that worsened over time; and applications refreshing in the background of the device sometimes require reloading upon launch.[17]

31.     Subsequent to this report, on December 20, 2017, Apple admitted in an email to *TechCrunch* that it purposefully throttles the Products' performance.[18]

---

[15] *Id.*

[16] https://www.geekbench.com/blog/2017/12/iphone-performance-and-battery-age/ (last visited on January 15, 2018)

[17] https://support.apple.com/en-us/HT208387 (last visited on January 15, 2018).

[18] https://techcrunch.com/2017/12/20/apple-addresses-why-people-are-saying-their-iphones-with-older-batteries-are-running-slower/ (last visited on January 15, 2018)

CLASS ACTION COMPLAINT

32.     On December 28, 2017, Apple issued a message to consumers, admitting that iOS 10.2.1 was delivered to improve power management but as a result "users may experience longer launch times for apps and other reductions in performance."[19] Apple also admitted that the same power management support was extended to iOS 11.2.[20]

33.     Members of the Classes relied on Apple's longstanding marketing campaign for the Products, including but not limited to: the representations on Defendant's websites regarding the A9 chip found in the Products; representations regarding the processing power of the Products during Defendant's Keynote events, which received 20 million viewers for the 2015 Keynote event, such as found in Paragraph 18;[21] representations on the software update prompts, which did not warn of any decease in processor speeds; and the general representation that the iPhone 6s and iPhone 6s Plus are improved versions of Apple's previous iPhone 5 generation of smartphones.

34.     However, as a result of the updates, the Products were slowed down and did not perform as advertised and marketed by Defendant, or as reasonably expected by consumers.

35.     Despite this lack of expectation and consent, Apple intentionally slowed down the Products and failed to inform Plaintiffs and members of the Update Class, at the time of update, that Apple was purposefully throttling the Products. Further, Plaintiffs and members of the Update Class did not consent to Apple slowing down the Products.

36.     Members of the Purchase Class expected the Products to perform at the speed advertised and marketed, regardless of whether their batteries are experiencing ordinary and commonplace aging, charge levels, or weather conditions. As John Poole of GeekBench

[19] https://www.apple.com/iphone-battery-and-performance/ (last visited on January 15, 2018).

[20] *Id.*

[21] https://qz.com/261181/the-hidden-structure-of-the-apple-keynote/ (last visited on January 15, 2018).

1  explains, regardless of whatever condition or aging occurs with the battery, "we expect processor

2  performance to stay the same."[22]

3       37.     Despite this expectation, Apple intentionally slowed down the Products and failed

4  to inform the Purchase Class, at the time of purchase, that Apple had purposefully throttled the

5  Products.

6       38.     Defendant knew or should have known that its updates throttled the performance

7  and speed of the Products. In its December 28, 2017 message to consumers, Apple admitted that

8  "[o]ver the course of this fall, we began to receive feedback from some users who were seeing

9  slower performance in certain situations." Therefore, Apple admitted to having knowledge of the

10  performance issues caused by its updates *prior to* releasing the iOS 11.2 update on December 2,

11  2017.

12       39.     As a result of Defendant's intentional slowing down of the Products, Plaintiffs

13  and other members of the Classes were harmed. Had Plaintiffs and other consumers known that

14  the operation of the Products would be slowed down by Apple, they would not have purchased

15  the Products or would have paid significantly less for them.  Therefore, Plaintiffs and other

16  consumers have suffered injury in fact as a result of Defendant's unlawful practices.

17       40.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiffs and

18  other members of the Update Class have had their use and possession of their Products

19  intentionally interfered with by Defendant without consent.

20       41.     Furthermore, as a direct and proximate result of Defendant's unlawful conduct,

21  Plaintiffs and/or other members of the Classes have also suffered other harms, included the

22  following:

23            a.  Money spent repairing or replacing the battery as a result of performance

24                decreases;

25

26

27  [22] https://www.geekbench.com/blog/2017/12/iphone-performance-and-battery-age/ (last visited

28  on January 15, 2018).

b. Money spent replacing or substituting the Products as a result of performance decreases;

c. Loss of use of the Products; and

d. Loss of value of the Products.

42. Therefore, Plaintiffs, on behalf of themselves and the Classes, are seeking damages, restitution, declaratory and injunctive relief, and all other remedies this Court deems appropriate.

43. Despite being misled and subject to Defendant's unlawful conduct, Plaintiffs are likely to purchase Defendant's iPhone products in the future if they were not slowed down. However, given that Plaintiffs were deceived and subject to Defendant's unlawful conduct in the past, Plaintiffs will not know in the future whether Defendant's Products come pre-installed with throttled operating systems or will be subject to updates which slow down the phones. This lack of knowledge is only further accentuated by Apple's own admission in its statement to *TechCrunch* that it "plan[s] to add support for other products in the future." Apple plans to throttle phones in the future.[23]

44. For these reasons, Plaintiffs seek injunctive relief on behalf of themselves and the Classes to enjoin Defendant from introducing any new iOS software update that throttles the processing power of the Products and requiring Defendant to remove any software-based limitation on the processing speed of Plaintiffs' and Class Members' Products, while still maintaining the security features found in the updates. Without this injunction, Plaintiffs and consumers have no meaningful choice but to revert to a previous iOS version, leaving the Products without adequate security protection, or update to the current iOS version, leaving the Products in a throttled state.

---

[23]https://techcrunch.com/2017/12/20/apple-addresses-why-people-are-saying-their-iphones-with-older-batteries-are-running-slower/ (last visited on January 15, 2018).

- 14 -
CLASS ACTION COMPLAINT

**V.     CLASS ACTION ALLEGATIONS**

45.     Plaintiffs seek relief on behalf of themselves, and all other persons similarly situated, that may be properly maintained under California Code of Civil Procedure section 382 and Civil Code section 1781.

46.     Plaintiffs seek to represent the following Classes:

a.     All California residents who purchased any of the Products that had iOS 10.2 or lower installed at the time of purchase, and subsequently updated their Products to iOS 10.2.1 or higher (the "Update Class").

b.     All California residents who purchased any of the Products with iOS 10.2.1 or higher pre-installed ("Purchase Class").

47.     Excluded from the Classes are: (i) Apple and its employees, principals, affiliated entities, legal representatives, successors, and assigns; (ii) any entity in which Apple has a controlling interest, and Apple's legal representatives; (iii) the judges to whom this action is assigned and any members of their immediate families; and (iv) any Class member who timely elects to be excluded from the Class.

48.     Plaintiff Santino is a member of the Update Class.

49.     Plaintiff Rabbanian is a member of the Purchase Class.

50.     Plaintiffs reserve the right under Rule 3.765(b) of the California Rules of Court to amend or modify the definition of the Classes with greater specificity or further division into subclasses or limitation to particular issues as discovery and the orders of this Court warrant.

51.     The members of the Classes are so numerous that their individual joinder is impracticable.  The proposed Classes contain thousands of members.  The true number can be ascertained through information and records in Apple's possession, custody or control.

52.     There are questions of law and fact common to the Classes which predominate over any questions which may affect only individual members of the Class, including but not limited to the following:

a.     Whether Apple purposefully throttled its Products via software updates;

b.    Whether Apple intentionally or negligently misrepresented the qualities of its Products, specifically the processing power of its iPhone 6s and iPhone 6s Plus;

c.    Whether Apple, by virtue of its throttling of the Products, trespassed onto the personal property of Plaintiffs and the Class Members,

d.    Whether Apple intentionally interfered with Plaintiffs and Class Members' lawful use and possession of their Products by decreasing the performance of their Products without their consent; and

e.    Whether Apple's conduct, as alleged herein, violates California consumer protection statutes and common law.

53.    Plaintiffs' claims are typical of the claims of the members of the Classes because their claims arise out of the same course of conduct by Apple and are based on the same legal theories. Plaintiffs' and the Classes' claims all stem out of Apple's unlawful act and practice of intentionally degrading the performance of the Products without consumers' knowledge or consent. Thus, Plaintiffs and members of the Classes were all injured as a direct and proximate result of the same wrongful conduct that Apple engaged in.

54.    Plaintiffs are willing and prepared to protect the interests of the Classes. Their interests do not conflict with the interests of the members of the Classes. Plaintiffs have retained counsel competent and experienced in prosecuting class actions, and they intend to prosecute this action vigorously.

55.    The prosecution of separate actions by individual members of the Classes would create risks of inconsistent or varying adjudication that would establish incompatible standards of conduct for Apple.

56.    Apple has acted or refused to act on grounds generally applicable to the Classes thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Classes.

57.    A class action is superior to other available means for the fair and efficient adjudication of this controversy. Prosecution of this case as a class action will provide relief with respect to claims that are too small to be brought individually.

VI.   **CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**Violation of California's Consumers Legal Remedies Act ("CLRA"),**
**California Civil Code §§ 1750, _et seq._**
_(for injunctive relief only)_

On Behalf of the Purchase Class

58.   Plaintiff Rabbanian re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

59.   Plaintiff Rabbanian brings this cause of action individually and on behalf of the Purchase Class against Defendant.

60.   Defendant is a "Person" within the meaning of Cal. Civ. Code § 1761(c).

61.   Plaintiff Rabbanian is a "consumer" within the meaning of Cal. Civ. Code § 1761(d).

62.   The Products are "goods" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of such Products members of the Purchase Class constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

63.   Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have […]." Defendant represented that the Products have the characteristics of an original, unmodified, and/or new version of the iPhone 6s and iPhone 6s Plus, yet subsequently sold the Products in a reconditioned and deteriorated state. Further, by marketing and selling the Products as being powered "by the custom-designed 64-bit A9 chip" which promised to deliver "up to 70 percent faster CPU performance, and up to 90 percent faster GPU performance for all your favorite graphics-intensive games and apps[,]" Apple represented that the Products have certain characteristics, particularly a certain quality of processing power. However, when members of the Purchase Class purchased the Products, the Products were no longer able to consistently meet these characteristics by virtue of Apple's intentional throttling. Thus, Apple violated Section 1770 (a)(5) of the CLRA.

64.     Cal. Civ. Code § 1770(a)(6) prohibits "[r]epresenting that goods are original or new if they have deteriorated unreasonably or are altered, reconditioned, reclaimed, used or secondhand." By marketing and selling the Products as being powered "by the custom-designed 64-bit A9 chip" which promised to deliver "up to 70 percent faster CPU performance, and up to 90 percent faster GPU performance for all your favorite graphics-intensive games and apps[,]" Apple represented that the Products have their original specifications. However, because Apple intentionally throttled the Products without informing members of the Purchase Class before they purchased the Products, the Products have deteriorated unreasonably and were altered. Further, Defendant represented that the Products were original, unmodified, and/or new versions of the iPhone 6s and iPhone 6s Plus, yet subsequently sold the Products in a reconditioned and deteriorated state. Therefore, Apple violated Section 1770 (a)(6) of the CLRA.

65.     Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Defendant represented that the Products have the standard, quality, and grade of an original, unmodified, and/or new version of the iPhone 6s and iPhone 6s Plus, yet subsequently sold the Products in a reconditioned and deteriorated state. Further, by marketing and selling the Products as being powered "by the custom-designed 64-bit A9 chip" which promised to deliver "up to 70 percent faster CPU performance, and up to 90 percent faster GPU performance for all your favorite graphics-intensive games and apps[,]" Apple represented that the Products have a particular standard, quality, or grade of processing power that the Products no longer have as a result of Apple's purposeful throttling. Therefore, members of the Purchase Class unknowingly purchased goods that were of a lower quality or grade than represented. Thus, Apple violated Section 1770 (a)(7) of the CLRA.

66.     Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." Defendant marketed and advertised the Products as being original, unmodified, and/or new versions of the iPhone 6s and iPhone 6s Plus, yet subsequently sold the Products in a reconditioned and deteriorated state. Further, by marketing and advertising the Products as being powered "by the custom-designed 64-bit A9 chip" which promised to

- 18 -
CLASS ACTION COMPLAINT

1  deliver "up to 70 percent faster CPU performance, and up to 90 percent faster GPU performance
2  for all your favorite graphics-intensive games and apps[,]" Apple represented that the Products
3  have a particular standard, quality, or grade of processing power that the Products no longer have
4  as a result of Apple's purposeful throttling. Therefore, Apple advertised the Products as being
5  able to provide a certain quality of processing power with the intent not to sell them as
6  advertised. Thus, Apple violated Section 1770 (a)(7) of the CLRA.

7      67.    Cal. Civ. Code § 1770(a)(16) prohibits "[r]epresenting that the subject of a
8  transaction has been supplied in accordance with a previous representation when it has not."
9  Defendant represented that the Products supplied to consumers are original and new versions of
10  the iPhone 6s and iPhone 6s Plus, yet subsequently supplied the phones in a reconditioned and
11  deteriorated state. Further, by marketing and advertising the Products as being powered "by the
12  custom-designed 64-bit A9 chip" which promised to deliver "up to 70 percent faster CPU
13  performance, and up to 90 percent faster GPU performance for all your favorite graphics-
14  intensive games and apps[,]" and subsequently supplying members of the Purchasing Class with
15  deteriorated versions of the Product, Apple represented that the Products supplied were in
16  accordance with these representations regarding processing power when they have not. Thus,
17  Apple violated Section 1770 (a)(16) of the CLRA.

18      68.    Members of the Purchase Class reasonably and justifiably relied on Apple and
19  their expertise in designing and manufacturing the Products to meet their representations and
20  perform as advertised.

21      69.    Members of the Purchase Class have suffered and continue to suffer injuries
22  caused by Apple because they would not have purchased the Products or would have paid
23  significantly less for them if they had known that Apple's conduct was unlawful and fraudulent.

24      70.    Pursuant to Cal. Civ. Code § 1780(a), members of the Purchase Class are seeking
25  injunctive relief to prevent Apple from further wrongful acts and unfair and unlawful business
26  practices, as well as restitution, disgorgement of profits, and any other relief this Court deems
27  proper.

28

71.    Pursuant to Cal. Civ. Code § 1782, on January 16, 2018, counsel for Plaintiffs mailed a notice and demand letter by certified mail, with return receipt requested, to Defendant. Defendant was further advised that if the relief requested has not been provided within thirty days, Plaintiffs would amend the complaint to include a request for monetary damages pursuant to the CLRA.

**On Behalf of the Update Class**

72.    Plaintiff Santino re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

73.    Plaintiff Santino brings this cause of action individually and on behalf of the members of the Update Class against Defendant.

74.    Defendant is a "Person" within the meaning of Cal. Civ. Code § 1761(c).

75.    Plaintiff Santino is a "consumer" within the meaning of Cal. Civ. Code § 1761(d).

76.    The Products are "goods" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of such Products by Plaintiff Santino and members of the Update Class constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

77.    Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have [...]." Defendant represented that the Products have the characteristics of an original, unmodified, and/or new version of the iPhone 6s and iPhone 6s Plus, yet subsequently sold the Products in a reconditioned and deteriorated state. By marketing and selling the Products as being powered "by the custom-designed 64-bit A9 chip" which promised to deliver "up to 70 percent faster CPU performance, and up to 90 percent faster GPU·performance for all your favorite graphics-intensive games and apps[,]" Apple represented that the Products have characteristics, particularly a certain quality of processing power. However, when Apple tampered with the Products sold to the Update Class, the Products were no longer able to consistently meet these characteristics by virtue of Apple's intentional throttling. Thus, Apple violated Section 1770 (a)(5) of the CLRA.

78.   Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Defendant represented that the Products have the standard, quality, and grade of an original, unmodified, and/or new version of the iPhone 6s and iPhone 6s Plus, yet subsequently sold the Products in a reconditioned and deteriorated state. By marketing and selling the Products as being powered "by the custom-designed 64-bit A9 chip" which promised to deliver "up to 70 percent faster CPU performance, and up to 90 percent faster GPU performance for all your favorite graphics-intensive games and apps[,]" Apple represented that the Products have a particular standard, quality, or grade of processing power that the Products no longer have as a result of Apple's purposeful throttling. Because of Apple's intentional degradation of the Products, they were no longer able to meet the representations provided to Plaintiff Santino and the Upgrade Class.  Thus, Apple violated Section 1770 (a)(7) of the CLRA.

79.   Members of the Upgrade Class reasonably and justifiably relied on Apple and their expertise in designing and manufacturing the Products to meet their representations and perform as advertised.

80.   Members of the Upgrade Class have suffered and continue to suffer injuries caused by Apple because they would not have purchased the Products or would have paid significantly less for them if they had known that Apple's conduct was unlawful and fraudulent.

81.   Pursuant to Cal. Civ. Code § 1780(a), Members of the Upgrade Class are seeking injunctive relief to prevent Apple from further wrongful acts and unfair and unlawful business practices, as well as restitution, disgorgement of profits, and any other relief this Court deems proper.

82.   Pursuant to Cal. Civ. Code § 1782, on January 16, 2018, counsel for Plaintiffs mailed a notice and demand letter by certified mail, with return receipt requested, to Defendant. Defendant was further advised that if the relief requested has not been provided within thirty days, Plaintiffs would amend the complaint to include a request for monetary damages pursuant to the CLRA.

## SECOND CAUSE OF ACTION
### Violation of Cal. Bus. & Prof. Code § 17200, *et seq.*
### California's Unfair Competition Law ("UCL")
#### *(for the Classes)*

83.   Plaintiffs re-allege and incorporate by reference each preceding paragraph as though set forth at length herein.

84.   Plaintiffs bring this claim individually and on behalf of the members of the Classes.

85.   UCL §17200 provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair, or fraudulent business practices [...]".

86.   Under the UCL, a business act or practice is "unlawful" if the act or practice violates any established state or federal law.

87.   Defendant's alteration and sale of the Products therefore was and continues to be "unlawful" because it violates the CLRA, California's False Advertising Law ("FAL"), and other applicable laws as described herein.

88.   As a result of Defendant's unlawful business acts and practices, Defendant unlawfully obtained money from Plaintiffs and members of the Classes.

89.   Under the UCL, a business act or practice is "unfair" if the defendant's conduct is substantially injurious to consumers, goes against public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing these acts or practices are outweighed by the severity of the harm to the alleged victims.

90.   Here, Apple's conduct is substantially injurious to consumers who seek to purchase a smartphone device that performs as represented and is free of tampering. Any benefit derived from Defendant's actions are outweighed by the fact that Defendant has undertaken these actions without the consent or knowledge of Plaintiffs or members of the Classes and because the actions have resulted in a major feature of the Products, their processing power, being curtailed. Furthermore, Plaintiffs are informed and believe that Defendant's actions were not taken in order to provide a benefit to consumers, but to coerce consumers into purchasing newer models of

1    Defendant's products. For these reasons, Apple's conduct was and continues to be "unfair" under
2    the UCL.

3        91.    As a result of Apple's unfair business acts and practices, Apple has unfairly and
4    unlawfully obtained money from Plaintiffs and members of the Class.

5        92.    Under the UCL, a business act or practice is "fraudulent" if it actually deceives or
6    is likely to deceive members of the consuming public.

7        93.    Defendant's conduct here was and continues to be fraudulent by two acts. First,
8    Defendant's conduct was fraudulent because Defendant deceived members of the Upgrade class
9    by tampering with and throttling their Products without their consent or knowledge. Second,
10   Defendant's conduct was fraudulent because Defendant deceived members of the Purchasing Class
11   into believing they were purchasing a device that met Defendant's representations about the
12   Products' processing power. Because Defendant misled Plaintiffs and members of the Classes,
13   Defendant's conduct was "fraudulent."

14       94.    As a result of Defendant's fraudulent business acts and practices, Defendants have
15   and continue to fraudulently obtain money from Plaintiffs, and members of the Classes.

16       95.    Plaintiffs request that this Court require Defendants to restore this unlawfully,
17   unfairly, and fraudulently obtained money to Plaintiffs and members of the Classes, to disgorge
18   the profits Defendant made on these transactions, and to enjoin Defendants from violating the UCL
19   or violating it in the same fashion in the future as discussed herein. Without such an order Plaintiffs

20
21
22
23
24
25
26
27
28

1   and members of the Classes may be irreparably harmed and/or denied an effective and complete

2   remedy.

### THIRD CAUSE OF ACTION
#### Violation of California's False Advertising Law ("FAL")
#### California Business & Professions Code §§ 17500, *et seq*
##### (*for the Classes*)

96.   Plaintiffs re-allege and incorporate by reference each preceding paragraph as though set forth at length herein.

97.   Plaintiffs bring this claim individually and on behalf of the members of the Classes.

98.   California's FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public [...] in any advertising device [...] or in any other manner or means whatever, including over the Internet, any statement, concerning [...] personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

99.   During the relevant class period, Defendant has represented to the public, including Plaintiffs and members of the Classes, that the Products are powered "by the custom-designed 64-bit A9 chip" which promised to deliver "up to 70 percent faster CPU performance, and up to 90 percent faster GPU performance for all your favorite graphics-intensive games and apps."[24] Furthermore, by selling the Products as an "iPhone 6s" or "iPhone 6s Plus," Defendant has represented that the Products have the characteristics of an original iPhone 6s or iPhone 6s Plus. However, the Products paid for by Plaintiffs and the Classes no longer have the characteristics of an original iPhone 6s or iPhone 6s Plus as their processing power has been intentionally degraded. Because Defendant has disseminated misleading information regarding the processing power of the Products, Defendant violated the FAL.

---

[24] https://web.archive.org/web/20160824025053/http:/www.apple.com/iphone-6s/ (last visited on January 15, 2018).

**CLASS ACTION COMPLAINT**

1     100.     As a result of Defendant's false advertising, Defendant has and continues to

2 fraudulently obtain money from Plaintiffs and members of the Classes.

3     101.     Plaintiffs request that Defendant be ordered to restore the fraudulently obtained

4 money to Plaintiffs and the members of the Classes, to disgorge the ill-gotten profits Defendant

5 made on the transactions of the Products, and to enjoin Defendant from violating the FAL or

6 violating it in the same fashion in the future as discussed herein. Without such an order, Plaintiffs

7 and members of the Classes may be irreparably injured and/or denied an effective and complete

8 remedy if such an order is not granted.

9 **FOURTH CAUSE OF ACTION**

10 **Breach of Express Warranty**
**California Commercial Code § 2313**

11 ***(for the Classes)***

    102.     Plaintiffs re-allege and incorporate by reference each preceding paragraph as

12 though set forth at length herein.

13     103.     Plaintiffs bring this claim individually and on behalf of the members of the

14 Classes against Defendant.

15     104.     California Commercial Code § 2313 provides that "(a) Any affirmation of fact or

16 promise made by the seller to the buyer which relates to the goods and becomes part of the basis

17 of the bargain creates an express warranty that the goods shall conform to the affirmation or

18 promise," and "(b) Any description of the goods which is made part of the basis of the bargain

19 creates an express warranty that the goods shall conform to the description." Cal. Com. Code §

20 2313.

21     105.     Defendant has expressly warranted through its website and its September 2015

22 Keynote that the Products hold certain characteristics regarding its computing power and speed.

23 These representations about the Products: (1) are affirmations of fact or promises made by

24 Defendant to consumers that the Products hold qualities and characteristics related to its

25 computer power; (2) which became part of the basis of the bargain between consumers and

26 Defendant; and (3) created an express warranty that the Products shall conform to these

27 affirmations and promises.

28

- 25 -
**CLASS ACTION COMPLAINT**

106. Plaintiffs and members of the Classes reasonably and justifiably relied on these express warranties, believing that the Products would actually perform and conform to the promises and affirmations that Defendant made about the Products.

107. Defendant has breached these express warranties by intentionally tampering with the Products, thereby selling the Products in a deteriorated manner or deteriorating the Products after purchase.

108. Plaintiffs and members of the Classes have been harmed. If Plaintiffs and members of the Classes had known that the Products did not meet the affirmations of fact and promises made by the Defendant, they would not have purchased the Products or would have paid less for the Products.

109. As a result of Defendant's breach of the express warranties, Plaintiffs and members of the Classes suffered injury and are entitled to recover all damages available under the law.

**FIFTH CAUSE OF ACTION**
**Breach of Implied Warranty**
**California Commercial Code § 2314**
***(for the Classes)***

110. Plaintiffs re-allege and incorporate by reference each preceding paragraph as though set forth at length herein.

111. Plaintiffs bring this claim individually and on behalf of the members of the Classes against Defendant.

112. California Commercial Code § 2314(1) provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1).

113. Defendant is a merchant with respect to the sale of the goods at issue, smartphone devices, including the specific Products here. Therefore, a warranty of merchantability is implied in the contract of each and every sale of the Products between Defendant and consumers.

CLASS ACTION COMPLAINT

1    114.   California Commercial Code § 2314(2) provides that "[g]oods to be merchantable
2  must be at least such as... (c) Are fit for the ordinary purpose for which such goods are used."
3  Cal. Com. Code § 2314(2)(c).

4    115.   By selling the Products, Defendant warranted that the Products are fit for their
5  ordinary purpose, which involves intensive processing by the Products' computer processing
6  unit. By intentionally throttling the Products, Defendant has failed to provide Products fit for
7  their ordinary purpose. Plaintiff and, on information and belief, many consumers have
8  encountered a material slowing of the Products to the extent where the Products may no longer
9  be considered fit for their ordinary purpose. Ordinary use of the Products does not and should not
10  involve a severe throttling of the performance speed which frustrates the purposes many users
11  have for the Products, particularly when this throttling was a purposeful act.

12    116.   California Commercial Code § 2314(2) provides that "[g]oods to be merchantable
13  must be at least such as... (d) Run, within the variations permitted by the agreement, of even
14  kind, quality and quantity within each unit and among all units involved." Cal. Com. Code §
15  2314(2)(d).

16    117.   By purposefully implementing a software update which materially degraded the
17  Products' processing power, Defendant provided Products which do not run of even kind and
18  quality to each and every unit involved. Rather, Products which do not run the defective software
19  update do not experience the throttling that Plaintiffs and members of the Class experience.
20  Furthermore, neither Plaintiffs nor members of the Classes agreed to receive a product that
21  carried this defective variation.

22    118.   Therefore, the Products are not merchantable under California law and Defendant
23  has breached the implied warranties associated with the Products.

24    119.   If Plaintiffs and members of the Classes knew that the Products were defective,
25  they would not have purchased them or would have not been willing to pay as much for them.
26  Therefore, Plaintiffs and members of the Classes have suffered injury and are entitled to recover
27  all damages available under the law as a result of Defendant's direct and/or indirect breach.

28

## SIXTH CAUSE OF ACTION
### Breach of Implied Contract
### *(for the Classes)*

120.   Plaintiffs re-allege and incorporate by reference each preceding paragraph as though set forth at length herein.

121.   Plaintiffs bring this claim individually and on behalf of the members of the Classes against Defendant.

122.   Defendant solicited and invited Plaintiffs and members of the Class to purchase the Products. Plaintiffs and members of the Class accepted Apple's offers and registered and purchased the Products from Defendant.

123.   By purchasing the Products from Defendant, Plaintiffs and members of the Class entered into mutually agreed-upon implied contracts with Defendant, pursuant to which Defendant agreed to not intentionally degrade the Products, including but not limited to decreasing the performance of the Products.

124.   Plaintiffs and members of the Class would not have purchased the Products from Defendant, and thereby would not have paid monies to Defendant, absent this implied contract between themselves and Apple.

125.   By purchasing the Products, Plaintiffs and Class members have fully performed their obligations under their implied contracts with Defendant.

126.   Defendant breached the implied contracts it made with Plaintiffs and Class members by purposefully degrading the quality of the Products through the decrease of their performance speed.

127.   As a direct and proximate result of Defendant's breaches of the implied contracts between itself and Plaintiffs and the Class members, Plaintiffs and the Class members sustained harm and damages as described above in Paragraphs 33-38.

## SEVENTH CAUSE OF ACTION
### Common Law Fraud
*(for the Classes)*

128.   Plaintiffs re-allege and incorporate by reference each preceding paragraph as though set forth at length herein.

129.   Plaintiffs bring this claim individually and on behalf of the members of the Classes against Defendant.

130.   Defendant has marketed the Products in a manner representing that they are free of defects, tampering, degradation, and fit for ordinary use. Defendant has willfully, falsely, or knowingly concealed and suppressed, until recently, the material fact that the Products were defective, degraded, and not fit for ordinary use. Thus, the Products are defective, contrary to Defendant's representations and omissions. Therefore, Defendant has made misrepresentations regarding the Products.

131.   Specifically, Defendant willfully concealed from Plaintiffs and the Classes the material fact that it has purposefully tampered with and throttled the processing speed of the Products.

132.   Defendant's misrepresentations are and were material, meaning they were the type of misrepresentations that a reasonable person would attach importance to and would be induced to act thereon in making purchase decisions, because they relate to the quality and grade of the Products.

133.   Defendant knew or recklessly disregarded the fact that the Products were defective and degraded.

134.   Defendant intended that Plaintiffs and consumers rely on Defendant's expertise in providing a highly sophisticated mobile device that would not be degraded or tampered with.

135.   Plaintiffs and members of the Classes have reasonably and justifiably relied on Defendant to provide Products free from degradation and defects. If Plaintiffs and members of the Classes had known the truth surrounding the Products and their throttling, they would not

- 29 -
CLASS ACTION COMPLAINT

1  have purchased the Products, would have purchased less of them, or would have paid —

2  significantly less for them.

3      136.    Thus, as a direct and proximate result of Defendant's fraud, Plaintiffs and

4  members of the Classes have suffered economic losses and other general and specific damages,

5  including but not limited to the price paid for the Products, the price paid for replacements of the

6  Products and/or their batteries, all in an amount to be proven at trial.

7                              **EIGHTH CAUSE OF ACTION**
                               **Intentional Misrepresentation**
8                                    *(for the Classes)*

9      137.    Plaintiffs re-allege and incorporate by reference each preceding paragraph as

10  though set forth at length herein.

11     138.    Plaintiffs bring this claim individually and on behalf of the members of the

12  Classes against Defendant.

13     139.    Defendant advertised and represented that the Products are powered "by the

14  custom-designed 64-bit A9 chip" which promised to deliver "up to 70 percent faster CPU

15  performance, and up to 90 percent faster GPU performance for all your favorite graphics-

16  intensive games and apps."[25] However, the Products were negatively altered to throttle the

17  processing speed below these representations. Further, Defendant marketed and advertised the

18  Products as being original, unmodified, and/or new versions of the iPhone 6s and iPhone 6s Plus,

19  yet subsequently sold the Products in a reconditioned and deteriorated state. Therefore,

20  Defendant has made misrepresentations as to the Products.

21     140.    Defendant's misrepresentations regarding the Products are material to a

22  reasonable consumer because they relate to the efficacy and quality of the device. A reasonable

23  consumer would attach importance to such representations and would be induced to act on these

24  representations when making purchasing decisions. This is particularly true when a company

25

26

27  [25] https://web.archive.org/web/20160824025053/http:/www.apple.com/iphone-6s/ (last visited on

28  January 15 2018).

1  advertises the variety and strength of the component, as Defendant has with the Products and
2  their A9 chips.

3      141.    During all relevant times when these representations were made, Defendant knew
4  that the representations were misleading, or acted recklessly in making the representations and
5  without regard to their truth.

6      142.    Defendant intended that Plaintiffs and other consumers would rely on these
7  representations, as evidenced by Defendant producing representations regarding the Products'
8  processing speed, as seen above in Paragraphs 17-18, and as evidenced by the fact that
9  Defendant refrained from informing Plaintiffs and consumers of their actions until December 20,
10  2017.

11      143.    Plaintiffs and members of the Classes have reasonably and justifiably relied on
12  Defendant's intentional misrepresentations when purchasing the Products, and if they had known
13  the truth regarding these representations, they would not have purchased the Products or would
14  have paid significantly less for them.

15      144.    Therefore, as a direct and proximate result of Defendant's intentional
16  misrepresentations, Plaintiffs and members of the Classes have suffered economic losses and
17  other general and specific damages, including but not limited to the price paid for the Product,
18  the price paid for any service and/or battery repairs for the Products, and any interest that would
19  have accrued on these monies, all in an amount to be proven at trial.

20                              **NINTH CAUSE OF ACTION**
                               **Negligent Misrepresentation**
21                                  *(for the Classes)*

22      145.    Plaintiffs re-allege and incorporate by reference each preceding paragraph as
23  though set forth at length herein.

24      146.    Plaintiffs bring this claim individually and on behalf of the members of the
25  Classes against Defendant.

26      147.    Defendant advertised and represented that the Products are powered "by the
27  custom-designed 64-bit A9 chip" which promised to deliver "up to 70 percent faster CPU
28

                                      - 31 -

1   performance, and up to 90 percent faster GPU performance for all your favorite graphics-
2   intensive games and apps."[26] However, the Products were negatively altered to throttle the
3   processing speed below these representations. Further, Defendant marketed and advertised the
4   Products as being original, unmodified, and/or new versions of the iPhone 6s and iPhone 6s Plus,
5   yet subsequently sold the Products in a reconditioned and deteriorated state. Therefore,
6   Defendant has made misrepresentations about the Products.

7       148.    Defendant's misrepresentations regarding the Products are material to a
8   reasonable consumer because they relate to the efficacy and quality of the device. A reasonable
9   consumer would attach importance to such representations and would be induced to act on these
10  representations when making purchasing decisions.

11      149.    Defendant knows or has been negligent in not knowing that the Products did not
12  meet the standards as represented and advertised to consumers once the iOS updates were put
13  into place.

14      150.    Defendant intended that Plaintiffs and other consumers would rely on these
15  representations, as evidenced by Defendant producing representations regarding the Products'
16  processing speed, as seen above in Paragraphs 17-18, and as evidenced by the fact that
17  Defendant refrained from informing Plaintiffs and consumers of their actions until December 20,
18  2017.

19      151.    Plaintiffs and members of the Classes have reasonably and justifiably relied on
20  Defendant's negligent misrepresentations when purchasing the Products.

21      152.    Therefore, as a direct and proximate result of Defendant's negligent
22  misrepresentations, Plaintiffs and members of the Classes have suffered economic losses and
23  other general and specific damages, including but not limited to the price paid for the Product,
24  the price paid for any service and/or battery repairs for the Products, and any interest that would
25  have accrued on these monies, all in an amount to be proven at trial.

26

27  [26] https://web.archive.org/web/20160824025053/http:/www.apple.com/iphone-6s/ (last visited on
28  January ___ 2018).

1

## TENTH CAUSE OF ACTION
### Trespass to Chattels
### (for the Classes)

2

3       153.    Plaintiffs re-allege and incorporate by reference each preceding paragraph as

4   though set forth at length herein.

5       154.    Plaintiffs bring this claim individually and on behalf of the members of the

6   Classes against Defendant.

7       155.    Plaintiffs owned and rightfully possessed the iPhone 6s, a Product at issue.

8       156.    Defendant intentionally interfered with Plaintiffs' use and/or possession of the

9   Product and has damaged the Product by purposefully throttling the performance speed of the

10  Product, thereby degrading the quality of the device.

11      157.    Plaintiffs did not consent to nor were Plaintiffs aware of Defendant's actions.

12      158.    As a direct and proximate result of Defendant's intentional trespass to Plaintiffs

13  and members of the Classes' property, Plaintiffs and members of the Classes have suffered

14  economic losses and other general and specific damages, including but not limited to the price

15  paid for the Product, the price paid for any service and/or battery repairs for the Products, and

16  any interest that would have accrued on these monies, all in an amount to be proven at trial.

17
## ELEVENTH CAUSE OF ACTION
### Quasi Contract/Unjust Enrichment/Restitution
### (for the Classes)

18

19

20      159.    Plaintiffs re-allege and incorporate by reference each preceding paragraph as

21  though set forth at length herein.

22      160.    Plaintiffs bring this claim individually and on behalf of the members of the

23  Classes against Defendant.

24      161.    As alleged herein, Defendant has intentionally and recklessly made misleading

25  representations to Plaintiffs and members of the Classes to induce them into purchasing the

26  Products. Plaintiffs and members of the Classes have reasonably relied on these representations

27  and have not received the entirety of the benefits promised by Defendant. Therefore, Plaintiffs

28  and members of the Classes have been induced by Defendant's misleading and false

- 33 -
## CLASS ACTION COMPLAINT

1   representations about the Products and, as a result of these representations, have paid more for

2   the Products than they otherwise would have or have purchased the Products when they would

3   have refrained from purchasing the Products.

4        162.   Plaintiffs and members of the Classes have provided a benefit onto Defendant as

5   Defendant has retained monies paid to it by Plaintiffs and members of the Classes.

6        163.   The monies received were obtained at the expense of Plaintiffs and members of

7   the Classes, as they did not receive the full value of the benefit conferred upon Defendant.

8        164.   For these reasons, it is inequitable and unjust for Defendant to keep these profits,

9   benefits, and compensation conferred upon it, unless Defendant returns its ill-gotten gains to

10   Plaintiffs and members of the Classes for the difference of the full value of the benefits

11   compared to the value actually received.

12        165.   As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and

13   members of the Classes are entitled to restitution, disgorgement, and/or the imposition of a

14   constructive trust upon all profits, benefits, and other compensation conferred onto Defendant

15   from its deceptive, misleading, and unlawful conduct as alleged herein.

16   **VII.   DEMAND FOR JURY TRIAL**

17        Plaintiffs demand a trial by jury.

18   **VIII.   PRAYER FOR RELIEF**

19        WHEREFORE, Plaintiffs, individually and on behalf of the Classes they seek to represent,

20   request that the Court order the following relief and enter judgment against Defendant as follows:

21        A.   For an Order certifying the Classes, as defined herein, and appointing Plaintiffs

22            and their Counsel to represent the Class;

23        B.   For an order finding in favor of Plaintiffs, and all Classes, on all counts asserted

24            herein;

25        C.   For an order awarding all damages, in amounts to be determined by the Court

26            and/or jury;

27        D.   For prejudgment interest on all amounts awarded;

28

1     E.    For interest on the amount of any and all economic losses, at the prevailing legal

2          rate;

3     F.    For an order of restitution and all other forms of equitable monetary relief;

4     G.    For equitable relief as set forth in Paragraph 44 of this Complaint;

5     H.    For an award of attorneys' fees pursuant to California Code of Civil Procedure

6          Section 1021.5, costs, and litigation expenses, as allowable by law;

7     I.    Such other and further relief as this court may deem just and proper.

8

9   Dated: January 16, 2018          Respectfully submitted,

10                      **FARUQI & FARUQI, LLP**

11                      By: _____

12                      Benjamin Heikali, SBN 307466
                         Joshua Nassir, SBN 318344

13                      10866 Wilshire Boulevard, Suite 1470
                         Los Angeles, CA 90024

14                      Telephone: (424) 256-2884
                         Facsimile: (424) 256-2885

15                      Email: bheikali@faruqilaw.com

16

17                      Bonner C. Walsh (*pro hac vice forthcoming*)
                         **WALSH PLLC**

18                      1561 Long Haul Road
                         Grangeville, ID 83530

19                      Telephone: (541) 359-2827
                         Facsimile: (866) 503-8206

20                      Email: bonner@walshpllc.com

21                      Mark J. Geragos, SBN 108325
                         Benjamin J. Meiselas, SBN 277412

22                      **GERAGOS & GERAGOS APC**
                         Historic Engine Co. No. 28

23                      644 South Figueroa Street
                         Los Angeles, CA 90017

24                      Telephone: (213) 625-3900
                         Facsimile: (213) 232-3255

25                      geragos@geragos.com

26                      meiselas@geragos.com

27                      Lori G. Feldman (*pro hac vice forthcoming*)

28                      **GERAGOS & GERAGOS APC**

CLASS ACTION COMPLAINT

1   7 W 24th Street
    New York, NY 10010
2   Telephone: (213) 625-3900
    Facsimile: (213) 232-3255
3   Email: lori@geragos.com

4

5   *Attorneys for Plaintiffs*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT